Wachtleb, J.
The defendants allegedly sold cocaine to an undercover State trooper on February 4, 1972. They were indicted for criminally selling a dangerous drug in the third degree (Penal Law, § 220.35), criminal possession of a dangerous drug in the fourth degree (Penal Law, § 220.15) and possession of a dangerous drug in the sixth degree (Penal Law § 220.05).
Following arraignment the defendants moved to inspect the Grand Jury minutes claiming that the evidence submitted was legally insufficient to support the charges. The court complied and after reviewing the evidence dismissed the indictment on the ground that ‘ ‘ the evidence before the Grand Jury was not legally sufficient to prove a chain of evidence showing that the alleged dangerous drug analyzed at the State Police Laboratory was the alleged dangerous drug possessed and/or sold by the defendant [s] so as to establish the commission by [them] of the alleged offenses charged.” The Appellate Division reversed and reinstated the indictment holding that “ the evidence * * * was legally sufficient.”
An indictment, of course, must rest on “ legally sufficient [evidence] ” (CPL 190.65, subd. 1), that is admissible or “ competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof ” (GPL 70.10, subd. 1). If the evidence does not establish “ the offense qharged or any lesser included offense ” (CPL 210.20, subd. 1, par. [b]) the indictment must be dismissed.
Here Officer De Grood, the undercover agent who made the purchase, testified before the Grand Jury that he went to the defendants’ premises and asked Connelly if he had any cocaine and Connelly said that he did. Connelly then sent the defendant Linda Ahrens into the bedroom. According to De Grood, “ She came out with six packs of tinfoil and told me to take my pick. Connelly said he wouldn’t handle the money * * * [so] I picked one out and gave the Twenty Five Dollars to *174 Linda [who] turned around and handed it to Connelly.” This testimony established a prima facie circumstantial case of possession and sale and the indictment should be sustained (People v. Peluso, 29 N Y 2d 605).
The trial court also erred in holding that the narcotics and the laboratory report had not been sufficiently connected with the defendants to be considered competent Grand Jury evidence. Officer De Grood informed' the Grand Jury that after making the purchase he “ marked the evidence ” and brought it to the police station in Poughkeepsie where he 1 ‘ placed it in the evidence locker.” The following day he turned it over to Investigator McCauley who testified that he mailed it to the State Police Laboratory in Albany for analysis. The packet was returned by mail together with a certified laboratory report indicating that the substance contained cocaine. McCauley identified the packet and the report and they were received in evidence.
Beal evidence is admissible when it is “ sufficiently connected with the defendants to be relevant to the issue in the case ” (People v. Mirenda, 23 N Y 2d 439, 453; People v. Kinney, 202 N. Y. 389). If the object was taken from the defendant or found at the scene of the crime, the foundation is laid once it is shown that the thing offered is the one recovered and that its condition is substantially unchanged (People v. Flanigan, 174 N. Y. 356). The fact that it might have passed through several hands in the interim is of little significance when the object possesses unique characteristics or markings and is not subject to material alteration which is not readily apparent. In these cases simple identification should suffice (People v. Flanigan, supra). But when the evidence itself is not patently identifiable or is capable of being replaced or altered, admissibility generally requires that all those who have handled the item ‘1 identify it and testify to its custody and unchanged condition ” (People v. Sansalone, 208 Misc. 491, 493).
In theory at least, under this so-called chain of evidence approach “ ‘ it is necessary to establish a complete chain of evidence, tracing the possession of the exhibit * * * to the final custodian, and * * * if one link in the chain is entirely missing, the exhibit cannot be introduced ’ or made the basis for the testimony or report of an expert or officer ” (Ann., *175 Evidence — Sample from Human Body, 21 ALB 2d 1216, 1220). In practice the chain has been kept within reasonable limits by for instance rejecting the notion that when an exhibit has been mailed for analysis each postal employee who handled the item should be considered a necessary link (People v. Jamison, 29 A D 2d 973). Becognizing the practical limitations, the chain of evidence approach has been employed in trials (People v. Malone, 14 N Y 2d 8) and to a lesser extent in Grand Jury proceedings (People v. Peluso, 29 N Y 2d 605, supra).
When the evidence is presented for Grand Jury consideration the Legislature has by statute (CPL 190.30, subd. 2) dispensed with the requirement of producing the expert who performed the analysis. The expert’s report if properly certified, is admissible to establish both the content of the exhibit and its source (People v. Peluso, supra). Thus, in the case now before us the chain from the defendants to the Grand Jury was adequately established by two witnesses — Officer De Grood who purchased the packet and delivered it to McCauley who in turn testified to the mailing and identified the items returned.
The defendants note that De Grood failed to testify whether the “ evidence locker ” was locked or accessible to other persons. In a similar vein, they point out that Investigator McCauley did not indicate how he maintained custody prior to mailing the item to the labóratory. They also draw attention to the fact that some of the markings on the evidence wrapper are inconsistent, all of which they claim breaks the chain rendering the evidence inadmissible. The prosecutor argues that these omissions and discrepancies only affect the weight of the evidence, not its admissibility.
These factors necessarily involve questions of degree for which it would be difficult to formulate' unvarying standards. However, as a general rule, inconsistent notations on the wrappers used to transmit evidence should be considered irregularities bearing only on the weight of the evidence when as here the defendants’ names or some other indicator invariably appears throughout. On the other hand, the fact that the item was or might have been accessible to other persons not called as witnesses casts suspicion on the integrity of the evidence often rendering it inadmissible especially when it appears that the evidence was available to unknown persons over an extended *176 period (see People v. Pfendler, 29 Misc 2d 339; cf. People v. Kinney, supra; People v. Nicoletti, 34 N Y 2d 249). Although the prosecutor would have been well advised to cover this point during presentation to the Grand Jury, it is obviously an issue which is best resolved during a full voir dire at trial. In any event, in the record now before us there is no apparent gap, and nothing to suggest access or tampering or that the evidence was not maintained in accordance with reasonable police procedures. The officers’ testimony established the identity and unchanged condition pf the evidence, prima facie, and that suffices for Grand Jury proof (People v. Oakley, 28 N Y 2d 309).
The orders reinstating the indictments should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli and Jones concur; Judges Babin and Stevens taking no part.
In each case: Order affirmed.